William E. Peterson (NV Bar 1528)
Wayne Klomp, Esq. (NV Bar 10109)
C. Thomas Burton, Jr., Esq. (NV Bar 3030)
SNELL & WILMER L.L.P.
50 West Liberty Street, Suite 510
Reno, Nevada 89501-1961
Telephone: 775-785-5440
Facsimile: 775-785-5441
Email: wpeterson@swlaw.com
       wklomp@swlaw.com
       tburton@swlaw.com
*Attorneys for Plaintiff ShieldIO, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| SHIELDIO, INC.,<br><br>       Plaintiff,<br><br>vs.<br><br>SIMON I. BAIN, an individual,<br><br>       Defendant. | Case No. 3:19-cv-700<br><br>**COMPLAINT** |

ShieldIO, Inc., a Delaware corporation (the "Company"), by and through its counsel, Snell & Wilmer L.L.P., submits this Complaint against Defendant Simon I. Bain, an individual ("Bain"), and states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. 1332. There is complete diversity between the parties because the Company is a Delaware corporation with its principal place of business in Washoe County, Nevada, and Bain is an individual who is a citizen of the United Kingdom and is not admitted for permanent residence in the United States, but presently resides or is domiciled in the state of California. The matter in controversy exceeds $75,000.

2. Venue is proper in this District pursuant to 28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims that is the subject matter of this action is situated in Washoe County, which is in this judicial district.

**GENERAL ALLEGATIONS**

3. This is an action for (i) breach of contract, (ii) contractual breach of the covenant of good faith and fair dealing, (iii) tortious breach of the covenant of good faith and fair dealing, (iv) breach of confidential relations, (v) breach of fiduciary duty as officer and director, (vi) interference with contracts, (vii) interference with prospective economic advantage, (viii) misappropriation of trade secrets, (ix) intentional misrepresentation or fraud, (x) conversion, (xi) false pretenses, (xii) product disparagement, (xiii) slander of title, and (xiv) declaratory relief. All claims are principally based on Bain's misappropriation, possession, and control over, and assertions of claims of ownership or other proprietary rights to intellectual property and trade secrets owned by the Company, as more particularly described below. Most of the acts and omissions alleged occurred in Washoe County and all the effects of such acts and omissions were directed and aimed at Washoe County and were experienced in Washoe County.

4. The intellectual property and trade secrets owned by the Company consist of Secure Autonomous Drivers™, Real Time Homomorphic Encryption™, Autonomous Data Security ADS™, security gateways, intellectual property related to patents owned by the Company and/or patents under development, including but not limited to, Patent Docket No. P2394-Patent Serial Application No. 16/013,751 – Titled: A System and Method for Secure Data Management Access Using Field Encryption and Natural Language Understanding and JDBC, OCBC, .NET, EF and other drivers (collectively, "Trade Secrets").

5. The Trade Secrets have independent economic value, actual and potential, from not being generally known to and not being readily ascertainable by proper means by the public, or by any other person who can obtain commercial or economic value from its disclosure and use.

6. The Company has expended considerable effort in maintaining the confidentiality and secrecy of the Trade Secrets and the Trade Secrets are not generally known to or accessible by the public or any other person.

7. The general purpose or concept of the Trade Secrets is homomorphic and similar to homomorphic encryption, which enables businesses to search data and perform mathematical operations on data that remains encrypted, without having to decrypt it, in real time all while

- 2 -

1  maintaining AES-256 encryption and eliminating the necessity for a Keystore. It is a cutting-edge
2  technology.

3        8.      The Trade Secrets are utilized in systems presently being sold or marketed by
4  Oracle, Teradata, Google, Arrow Electronics, Good Feather Consulting, and others, and the
5  market for the Trade Secrets is robust with considerable upside potential and opportunity.

6        9.      The Company obtained over $800,000 in investor funding based on promises and
7  representations regarding the Company's further developing, owning, marketing, and selling the
8  Trade Secrets.

9        10.      The Company is currently engaged in further developing, owning, marketing, and
10  selling the Trade Secrets in various applications to numerous other potential buyers and users of
11  the Trade Secrets.

12        11.      Bain is an individual who was employed by the Company as its chief technology
13  officer ("CTO") and was a member of the Company's board of directors from approximately
14  September 2018 to November 11, 2019, at which time Bain resigned as CTO and terminated his
15  employment with the Company.

16        12.      As CTO, Bain was instrumental in developing the Trade Secrets and in
17  consideration for a substantial equity ownership in the Company, Bain entered into two
18  agreements with the Company: (i) an employee confidential information and inventions
19  assignment agreement ("Employment Agreement") and (ii) a technology assignment agreement
20  ("Assignment Agreement"). True and correct copies of these agreements are attached to the
21  declaration of C. Thomas Burton, Jr., attached as <u>Exhibit 1</u>.

22        13.      Under the Employment Agreement, the Trade Secrets are deemed "Confidential
23  Information", "Intellectual Property Rights", and "Work Product", and Bain warranted and
24  represented that (i) the Company had a protectable property interest in the Trade Secrets,
25  Confidential Information, Intellectual Property Rights, and Work Product, (ii) Bain would, at all
26  times during and after his employment, not disclose or use any of the Trade Secrets, Confidential
27  Information, Intellectual Property Rights, and Work Product, (iii) Bain assigned to the Company
28  all rights, entitlement, and ownership of whatsoever kind or nature in and to the Trade Secrets,

1  Confidential Information, Intellectual Property Rights, and Work Product, and (iv) Bain would
2  not claim any right, title, or interest in and to the Trade Secrets, Confidential Information,
3  Intellectual Property Rights, and Work Product. *See* Employment Agreement, Sections 1.1, 2.1,
4  and 2.3.

5        14.    In addition, under the Employment Agreement, on termination of Bain's
6  employment for any reason, Bain would (i) return and deliver to the Company all Trade Secrets,
7  Confidential Information, Intellectual Property Rights, and Work Product, and all derivative
8  evidence thereof and (ii) delete any copies or other evidence thereof remaining in Bain's
9  possession, custody or control. *Id.* at Section 8.

10        15.    The promises and covenants set forth above survived the term of Bain's
11  employment. *Id.* at Section 12.4.

12        16.    Under and pursuant to the Assignment Agreement, Bain transferred, sold,
13  conveyed, and assigned to the Company all of his right, title and interest in and to the Trade
14  Secrets, and related information, all of which is defined as "Property" in Exhibit A to the
15  Assignment Agreement, which description is fully incorporated by reference as though fully
16  restated herein. Property, Confidential Information, Intellectual Property Rights, Work Product,
17  and Trade Secrets shall be collectively referred to in this complaint as "Trade Secrets".

18        17.    In addition, Bain agreed to promptly take any and all actions necessary and
19  provide any assistance necessary for the Company to procure, maintain, perfect and enforce the
20  full benefits of the Trade Secrets, and to deliver to the Company, on demand, all of the Trade
21  Secrets.

22        18.    The Company met with and/or communicated with numerous potential investors in
23  the Company in 2018 and 2019 and affirmed and acknowledged in writing and verbally, and by
24  providing the Assignment and Employment Agreements to investors, the Company's exclusive
25  right, title, and interest in and to the Trade Secrets, and in justifiable reliance thereon, the
26  Company raised approximately $800,000 in investor funds.

27        19.    On November 11, 2019, Bain resigned from the Company and stated that (i) the
28  Company does not own the Trade Secrets and (ii) Bain has some continued ownership interest in

- 4 -

the Trade Secrets.

20. Bain did not return the Trade Secrets to the Company at the time of his termination of employment.

21. Bain obtained money from the Company and the Company executives in consideration for services rendered or to be rendered, with the promise that Bain would repay and or return those funds. Bain, however, did not return those funds and made such promises without having any intent to repay or return the funds.

22. The Company's economic "raison d'etre" is exclusively predicated on the Company's ability to protect, market, and sell the Trade Secrets, and its present and future business and prospects will be destroyed if Bain continues to exercise and claim any right, title, interest, possession, custody, ownership, dominion or control over the Trade Secrets.

23. Bain's claim of right, title, interest, ownership, custody and/or control over the Trade Secrets clouds the Company's exclusive ownership of the Trade Secrets and has disparaged the Company's Trade Secrets in a manner that has severely damaged the profits, income, balance sheet, reputation, goodwill, standing, assets, and present and future business and prospects of the Company.

24. Bain was specifically aware of the Company's contracts and obligations with third-parties and entities as more particularly described above, and by reason of the claims Bain has made and the actions Bain has engaged in as described above, Bain has knowingly and deliberately interfered with the Company's ability to perform under those contracts with the intent, or in reckless and conscious disregard of the probability, to disrupt, cancel or terminate those contracts, or expose the Company to potential liability in connection with its inability to perform.

25. Bain was specifically aware of the numerous prospects under review by the Company for marketing and selling the Trade Secrets in various applications, and by reason of Bain's claims to an interest in the Trade Secrets and disaffirmation of the Company's exclusive ownership thereof, Bain has interfered with and disrupted those future economic prospects and opportunities which the Company had a reasonable and probable expectation of realizing.

26. At the time Bain entered into the Employment Agreement and Assignment Agreement, obtained the benefits thereof and made the representations in such agreements, Bain did not and never intended to perform the obligations on his part to be performed under such agreements as Bain represented he would perform at the time he entered into them.

27. All the acts, omissions, and conduct of Bain as above alleged, and the false and fraudulent representations Bain made, as set forth above, (i) proximately caused substantial injury, damage, and harm to the Company, (ii) were made with the intent or in conscious disregard of the probability, indeed certainty, that the Company would be substantially injured, harmed, and damaged in the Company's business, prospects, and reputation, which it was, and (iii) were willful, malicious, and fraudulent in act and intent.

28. The Company has been forced to retain attorneys to protect and advance its interests as above alleged, has incurred costs and reasonable attorney fees in such effort, and will continue to incur them in the future.

29. The acts and omissions of Bain, if allowed to continue will destroy the business, reputation, and prospects of the Company and by virtue of such destruction, damages or other legal relief is not adequate and the Company is and will continue to be irreparably harmed and injured.

30. As an officer and director of the Company, Bain owed the Company and its shareholders (i) a duty of undivided loyalty to act in the Company's best interests and to avoid conflicts of interests, (ii) a duty of care in connection with the discharge of Bain's duties, and (iii) a duty to act reasonably in the best interest of the Company.

31. As an officer and director of the Company, in assisting in developing the Company's business and prospects, Bain expressly acknowledged that he was entering into a relationship of confidence and trust with the Company and, in particular, with respect to the Trade Secrets. *See* Employment Agreement Section 1.1.

//

//

//

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

32. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

33. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain breached both the Employment Agreement and the Assignment Agreement, which breaches proximately caused the damages to the Company as above alleged.

**SECOND CLAIM FOR RELIEF**
**(Contractual Breach of Covenant)**

34. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

35. There is in every contract a covenant of good faith and fair dealing that each party to a contract will act in such manner as to not intentionally deprive the other party to the contract from enjoying the benefits reasonably to be expected under the contract.

36. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain breached the duty of good faith and fair dealing in both the Employment Agreement and the Assignment Agreement, which breaches proximately caused the damages to the Company as above alleged.

**THIRD CLAIM FOR RELIEF**
**(Tortious Breach of the Covenant)**

37. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

38. Bain entered into a relationship of confidence and trust with the Company as above alleged, which relationship imposes a duty of good faith and fair dealing in connection with Bain's business dealings with the Company's and Bain's acts and omissions in connection with such business dealings.

39. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain intentionally and tortiously breached his duty of good faith and fair dealing to the Company,

which breaches proximately caused the damages to the Company as above alleged.

### FOURTH CLAIM FOR RELIEF
### (Breach of Confidential Relations)

40. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

41. Bain entered into a relationship of confidence and trust with the Company.

42. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain breached and abused that relationship, which breach and abuse proximately caused the damages to the Company as above alleged.

### FIFTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty as an Officer and Director)

43. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

44. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain, as officer and director of the Company, breached his duty of loyalty and care to the Company and to its shareholders, which breach proximately caused the damages to the Company as above alleged.

### SIXTH CLAIM FOR RELIEF
### (Interference with Contracts)

45. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

46. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain was specifically aware of contracts the Company had entered into, and knowingly and intentionally interfered with the Company's ability to perform those contracts in accordance with their terms, which interference proximately caused the Company's damages as above alleged.

### SEVENTH CLAIM FOR RELIEF
### (Interference with Prospective Economic Advantage)

47. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

48. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain was acutely aware of business prospects and opportunities the Company was going to realize from the marketing and sale of its Trade Secrets, and knowingly and intentionally interfered with those prospects, which interference proximately caused the Company's damages as above alleged.

**EIGHTH CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets)**

49. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

50. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain usurped, acquired, and misappropriated the Trade Secrets, which misappropriation proximately caused the damages to the Company as above alleged. *See* both Uniform Trade Secrets Act and Defend Trade Secrets Act of 2016.

**NINTH CLAIM FOR RELIEF**
**(Intentional Misrepresentation or Fraud)**

51. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

52. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain knowingly, or in conscious and reckless disregard of their truth and accuracy, falsely represented to the Company that Bain would (i) honor, respect, implement, abide by, and enforce Bain's assignment, transfer, and conveyance of all of his right, title, and interest in and to the Trade Secrets, and (ii) protect, defend, and at all times acknowledge the Company's exclusive right, title, interest, and ownership of and to the Trade Secrets.

53. Bain made those misrepresentations at or about the time Bain signed the Employment Agreement and the Assignment Agreement in the form and manner and substance as is set forth in those agreements, and verbally repeated, affirmed, and acknowledged those representations to the Company's officers and directors, and to investors and investor groups in the last half of 2018 and in the first half of 2019, knowing all the time that such representations were untrue and that Bain was going to disavow, disaffirm, and repudiate those representations.

54. Bain's misrepresentations as set forth above, proximately caused damages to the Company as above alleged.

### TENTH CLAIM FOR RELIEF
### (Conversion)

55. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

56. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain has knowingly, intentionally, and with the intent to deprive the Company of its ownership and possession of the Trade Secrets, (i) exercised dominion and control over said Trade Secrets and (ii) continues to exercise such dominion and control of the Trade Secrets, which conduct has deprived the Company of its Trade Secrets and proximately caused the Company significant damages.

### ELEVENTH CLAIM FOR RELIEF
### (False Pretenses)

57. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

58. By virtue of the acts, omissions, and conduct of Bain, as above alleged, Bain, with malice aforethought, obtained money and property and monetary benefits from the Company, as above described by falsely pretending that Bain intended to honor and perform Bain's obligations and commitments as above alleged, which false pretenses on Bain's part caused the Company to lose property and money, and incur the damages as above alleged.

### TWELFTH CLAIM FOR RELIEF
### (Product Disparagement)

59. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

60. By virtue of the acts, omissions, and conduct of Bain as above alleged, Bain, intentionally and knowingly, disparaged and slandered the Trade Secrets thereby proximately causing the Company the damages as above alleged.

## THIRTEENTH CLAIM FOR RELIEF
(Slander of Title)

61. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

62. By virtue of the acts, omissions, and conduct of Bain as herein alleged, Bain has slandered and placed a cloud on the Company's exclusive right, title, and interest in and to the Trade Secrets, which slander and clouding has proximately caused the Company's damages as above alleged.

## FOURTEENTH CLAIM FOR RELIEF
(Declaratory Relief)

63. The Company incorporates each and every of its allegations and averments set forth above as though fully restated in this paragraph.

64. A real and present controversy has arisen between the Company and Bain in that the Company claims that it has exclusive right, title, and interest in and to the Trade Secrets, and Bain denies such claim.

//

//

**WHEREFORE THE COMPANY REQUESTS FROM THE COURT AS FOLLOWS:**

1. For damages, including punitive damages, as may be proved at trial or allowed under applicable law;

2. For costs of suit and reasonable attorney fees;

3. For a declaration that the Company has exclusive right, title, interest and ownership of the Trade Secrets;

4. For an order (i) enjoining and restraining Bain from possessing, or exercising any dominion or control over the Trade Secrets, claiming any rights to such property, and (ii) compelling Bain to return to the Company all Trade Secrets; and

5. For such other and further relief as the court may deem just and proper.

Dated: November 20, 2019.                    SNELL & WILMER L.L.P.

By: */s/ Wayne Klomp*
William E. Peterson (NV Bar 1528)
C. Thomas Burton, Jr. (NV Bar 3030)
Wayne Klomp, Esq. (NV Bar 10109)
50 West Liberty Street, Suite 510
Reno, Nevada 89501-1961
*Attorneys for Plaintiff ShieldIO, Inc.*

Exhibit List

1. Declaration of C. Thomas Burton, Jr.        16 pages